**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FELIX GONZALO VEGA ORAMAS,<br>Petitioner,<br>vs.<br>PAMELA BONDI, *et al.*,<br>Respondents. | Case No.: 2:26-cv-00973-GMN-EJY<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

Pending before the Court is Petitioner Felix Gonzalo Vega Oramas' First Amended Petition for Writ of Habeas Corpus, (ECF No. 13). Also pending before the Court is Petitioner's Motion for Temporary Restraining Order, (ECF No. 14). Federal Respondents Michael Bernacke, Todd Blanche, Pamela Bondi, Ruben Leyva, Todd Lyons, Markwayne Mullin, and Kristi Noem filed a Response to the Petition and the Motion, (ECF No. 20),[1] to which Petitioner filed a Reply, (ECF No. 22).

For the reasons discussed below, the Court GRANTS the First Amended Petition, DENIES as moot the Motion for Temporary Restraining Order, and orders Petitioner's immediate release.

## I. BACKGROUND

Petitioner, a citizen of Cuba, arrived in the United States on April 18, 2016, seeking asylum. (First. Am. Pet. 5:2–3); (*see also* I-213 at 3, Ex. 3 to First Am. Pet., ECF No. 13-4). He was granted parole and released into the country. (First Am. Pet. 5:3–4); (*see also* I-213 at 3, Ex. 3 to First Am. Pet.). On May 31, 2017, Petitioner was arrested for three counts of illegal use of a credit card. (First Am. Pet. 5:4–5); (*see also* I-213 at 4, Ex. 3 to First Am. Pet.). He

[1] Federal Respondents also filed a duplicate Response, (ECF No. 21), which the Court STRIKES.

pled guilty to three misdemeanor counts and was sentenced to 270 days in jail. (First Am. Pet. 5:5–7). On December 23, 2017, Petitioner was released from jail and immediately taken into custody by Immigration and Customs Enforcement ("ICE"). (*Id.* 5:7–10); (*see also* I-213 at 4, Ex. 3 to First Am. Pet.). He was ordered removed to Cuba on January 31, 2018, and he waived his right to appeal. (First Am. Pet. 5:10–15); (*see also* Remov. Order at 2–3, Ex. 1 to First Am. Pet., ECF No. 13-2). However, because ICE was unable to remove him to Cuba, Petitioner was released on an Order of Supervision ("OSUP") on February 20, 2018. (First Am. Pet. 5:16–17); (*see also* OSUP at 2, Ex. 2 to First Am. Pet., ECF No. 13-3). Federal Respondents do not challenge Petitioner's assertion that he fully complied with the conditions of his release. (First Am. Pet. 5:17–6:1; 6:21–24).

On March 23, 2026, Petitioner was arrested on a case of mistaken identity and then transferred to ICE custody. (*Id.* 6:1–3); (*see also* I-213 at 4, Ex. 3 to First Am. Pet.). That day, ICE issued a Notice of Revocation of Release that notified Petitioner that his OSUP was revoked based on "changed circumstances in [his] case," but the Notice identified the 2017 arrest and conviction that preceded Petitioner's order of removal and his release on supervision. (First Am. Pet. 6:3–10); (*see also* Not. Revoc. Rel. at 2–3, Ex. 4 to First Am. Pet., ECF No. 13-5). On April 3, ICE issued a Notice of Removal indicating that he would be removed to Mexico, but Petitioner refused to consent to deportation to Mexico. (First Am. Pet. 7:20–22); (*see also* Not. Remov. at 2, Ex. 6 to First Am. Pet., ECF No. 13-7). He was not given an opportunity to present a fear-based claim about his potential removal to Mexico. (First Am. Pet. 7:22–8:2). He has been in ICE custody ever since.

## II. LEGAL STANDARD

### A. Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

(citing U.S. Const., art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**B. Statutory Detention Scheme**

When the Government wants to remove an individual, the normal path is through removal proceedings, requiring an evidentiary hearing before an Immigration Judge ("IJ"). 8 U.S.C. § 1229a. Removal proceedings determine not only whether an individual may be removed from the United States but also to where they may be removed. In the first instance, the noncitizen is entitled to select a country of removal. *Id.*; 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). If the noncitizen does not do so, the IJ will designate the country of removal and may also designate alternative countries. 8 C.F.R. § 1240.10(f).

Meanwhile, the noncitizen is also entitled to seek various protections, including asylum, statutory withholding of removal, and Convention Against Torture ("CAT") protections. 8 C.F.R. § 1240.11(c)(1). Some of these protections are discretionary. *See e.g.*, 8 U.S.C. § 1158; 8 C.F.R § 208.2. Others are mandatory, meaning that protection must be given if the conditions are met. Withholding of removal is a mandatory form of protection preventing deportation to the country or countries where an IJ finds that the individual is more than likely to be persecuted. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; *see also Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("[T]he Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility [for withholding of removal or CAT protections]."). CAT protection is a mandatory protection against deportation to a country where the IJ finds

that the individual is likely to be tortured. *Andrade v. Garland*, 94 F.4th 904, 914 (9th Cir. 2024).

## III. DISCUSSION

Petitioner alleges that he is entitled to habeas relief because (1) his detention violates his Fifth Amendment right to due process because his removal is not reasonably foreseeable as required by *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) his detention violates the Immigration and Nationality Act ("INA"); (3) his re-detention while on an OSUP violated his Fifth Amendment due process rights and the Administrative Procedure Act ("APA"); (4) ICE's current policy and procedures relating to third-country removals violate the APA and Petitioner's Fifth Amendment due process rights; and (5) Petitioner's detention under that policy violates his Fifth Amendment due process rights and the APA. (*See generally* First Am. Pet.). The Court begins by addressing Petitioner's arguments under the Fifth Amendment.

### A. Petitioner's Detention Violates the Fifth Amendment

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has held that "the Due Process Clause protects [a noncitizen] subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693–94. In *Zadvydas*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Id.* at 699.

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of a final order of removal. 8 U.S.C. § 1231(a)(1). The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration

detention or confinement. § 1231(a)(1)(B). During the removal period, detention is mandatory. § 1231(a)(2). Under § 1231, the removal period may be extended beyond 90 days for a variety of reasons including a determination by the Department of Homeland Security ("DHS") that "removal is not practicable or proper." *Id.*

Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. at 682. When a removable noncitizen is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id.* at 699. The Supreme Court adopted a six-month period of presumptive reasonableness after the removal order is final and confirmed that "[a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 710. The Court further determined that "after this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Courts interpreting *Zadvydas* have held that "the six-month period does not reset when the government detains [a noncitizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again." *Sied v. Nielsen*, No. 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (collecting cases); *see also Siguenza v. Moniz*, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sep. 25, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing

and redetaining them."). In *Doan v. Blanche*, No. 2:26-CV-00473-GMN-BNW, 2026 WL 949037, at *3 (D. Nev. Apr. 8, 2026), the Court adopted this cumulative principle and applies it here as well.

Petitioner's removal order became final on January 31, 2018. (*See* Remov. Order at 2, Ex. 1 to First Am. Pet.). He was first released on February 20, 2018, 20 days later. (*See* I-213 at 4, Ex. 3 to First Am. Pet.). He was re-detained on March 23, 2026, over seven months before the issuance of this Order. (*See id.* at 3). Added together, Petitioner has been detained for close to eight months, so his detention has long since surpassed the six-month period of presumptive reasonableness. Because the six-month period has passed, the Court must determine whether Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and if so, whether Respondents rebut that showing.

**1. Petitioner's Initial Burden**

Petitioner argues that his removal is not reasonably foreseeable under *Zadvydas*. He puts forth evidence to support an initial finding that there is no significant likelihood of removal in the reasonably foreseeable future.

First, it appears extremely unlikely that Petitioner will be removed to Cuba in the reasonably foreseeable future. Petitioner explains that as of late 2025, "there were at least 34,000 Cubans with final orders of removal in the United States who were not removed to Cuba." (First. Am. Pet. 18:14–19) (citing *Veiga v. Bondi*, No. 2:25-cv-02168-TMC, 2025 WL 3526067, at *1 (W.D. Wash. Dec. 9, 2025)). He claims that Cuba is unlikely to issue travel documents or admit him because of the country's longstanding policy to not accept Cuban nationals with final orders of removal, particularly those with criminal convictions. (*Id.* 18:16–27) (quoting *Perez Canet v. Blanche*, No. 2:26-cv-00223-APG-NJK, 2026 WL 1091763, at *3 (D. Nev. Apr. 22, 2026)). Nothing in the record suggests to the Court that Petitioner's case is

an exception; indeed, nothing in the record suggests that Respondents ever attempted to remove Petitioner to Cuba after his initial release from custody in 2018. Respondents' inability to effectuate removal to Cuba in the eight years since he was issued a final order of removal further supports Petitioner's claim that removal is not significantly likely in the reasonably foreseeable future. *See, e.g.*, *Vijdani v. Mattos*, No. 2:25-cv-02496-GMN-EJY, 2026 WL 560209, at *4 (D. Nev. Feb. 27, 2026) (also addressing an eight-year period since the removal order became final).

Second, it appears unlikely that Petitioner will be removed to Mexico in the reasonably foreseeable future. He does not consent to his removal to Mexico, (*see* 7:20–22), and courts in this circuit and other circuits have found that removal to Mexico is unlikely where the petitioner does not consent. *See, e.g.*, *Suarez-Ramirez v. Mattos*, No. 2:25-cv-02369-MMD-EJY, 2026 WL 115020, at *3 (D. Nev. Jan. 15, 2026); *Pena-Gil v. Lyons*, No. 25-CV-03268-PAB-NRN, 2025 WL 3268333, at *3 (D. Colo. Nov. 24, 2025). In sum, Petitioner's allegations give the Court good reason to believe that he is not likely to be removed to Mexico in the reasonably foreseeable future.

**2. Respondents' Burden**

The burden thus shifts to Respondents to produce evidence sufficient to rebut Petitioner's showing. *See Zadvydas*, 533 U.S. at 701. Respondents submit no evidence that DHS has attempted to coordinate a transfer to Mexico—*e.g.*, travel documents or communications with Mexican officials—or even that they have begun the process in that time. *See, e.g.*, *Perez Canet v. Blanche*, No. 2:26-cv-00223-APG-NJK, 2026 WL 1091763, at *4 (D. Nev. Apr. 22, 2026) (listing types of evidence that respondents could produce to meet their burden). In addition, Respondents do not explain how ICE plans to remove Petitioner to Mexico despite his unwillingness to go there. *See, e.g.*, *Celis v. Bondi*, No. 2:26-cv-00079-GMN-DJA, 2026 WL 710961, at *3 (D. Nev. Mar. 13, 2026) (noting that the petitioner

provides evidence that Mexico only accepts individuals from other countries who "willingly" go to Mexico). Courts in this circuit have regularly refused to find respondents' burden met where respondents have offered little more than generalizations regarding the likelihood that removal will occur, which is still more than Respondents allege here. *See, e.g.*, *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025). Instead, Respondents' only response to Petitioner's due process claims is that Petitioner had not reached the 90-day removal period, but by now, that argument is long since moot. (Fed. Resp. 10:13–18, ECF No. 20).

Accordingly, Petitioner is entitled to habeas relief under the Fifth Amendment.

**B. ICE Failed to Comply with Regulations for Re-Detention of OSUP Individuals**

Petitioner also asserts that ICE failed to comply with its own regulations concerning the re-detention of individuals on Orders of Supervision. (First Am. Pet. 20:10–23:6). Federal Respondents do not address this ground for relief.

Respondents have the authority to detain noncitizens with final orders of removal to effectuate deportation. *See* 8 U.S.C. § 1231; *Zadvydas*, 533 U.S. at 697. But when a noncitizen has been released from immigration detention, the revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release for purposes of removal. DHS regulations permit revocation of release if the appropriate official: (1) determines that the noncitizen who has been released under an order of supervision violates any of the conditions of release or (2) finds "on account of changed circumstances" there is "a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(1)–(2). The noncitizen must be notified of the reasons for their revocation and receive "an initial informal interview promptly," during which they will have "an

opportunity to respond to the reasons for revocation stated in the notification" and submit evidence in support of their position. § 241.13(i)(3).

Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Here, Petitioner contends that he has not received the initial interview required by regulation, and ICE has not invited him to contest the revocation of his order of supervision or allowed him to provide evidence. (First Am. Pet. 22:1–7). Federal Respondents fail to produce any evidence to support a finding that they complied with their own regulations when initially revoking his release. Because there is no indication that an informal interview was provided to Petitioner, nor an opportunity for him to respond to the reasons for revocation, the Court finds that Petitioner's re-detention is unlawful and he is entitled to release.

**C. Petitioner Is Entitled to Due Process Before Removal to a Third Country**

Petitioner contends that ICE's policy to remove noncitizens to a third country with no notice or opportunity to seek fear-based protection constitutes arbitrary and capricious agency action that violates the APA, 5 U.S.C. § 706. (First Am. Pet. 23:7–25:2). Petitioner also avers that he has a due process right to meaningful notice and opportunity to present a fear-based claim to an IJ before DHS deports him to a third country. (*Id.* 23:20–26).

"Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)). "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)). "[I]ndividuals whose rights are

being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (mem.).

Respondents do not respond to Petitioner's argument that he has a right to due process before third-country removal. (*See generally* Fed. Resp.). Accordingly, the Court finds that Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an IJ before DHS deports him to a third country.[2]

**D. Scope of Relief**

First, Petitioner requests that he be released immediately. (First Am. Pet. 25:20–21). The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision. *Zadvydas* explains that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700. It further provides that the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700. Moreover, when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Because the Court holds that Petitioner's continued detention violates the Fifth Amendment based on the analytical framework provided in *Zadvydas*, the Court finds that

[2] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether the stated policy violates the APA.

Petitioner's immediate release, subject to the terms of his original Order of Supervision, (Ex. 2 to First Am. Pet.), is warranted. *See Zadvydas*, 533 U.S. at 699–700.

Second, Petitioner requests that the Court prohibit Respondents from removing him to a third country without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal. (First Am. Pet. 25:24–26:2). For the reasons discussed above, the Court grants this requested relief.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's First Amended Petition, (ECF No. 13), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order, (ECF No. 14), is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Federal Respondents' duplicate Response, (ECF No. 21), is **STRICKEN.**

**IT IS FURTHER ORDERED** that Petitioner must be released from detention no later than **October 29, 2026,** between the hours of **12:00 P.M. and 3:00 P.M.** subject to the conditions of his prior Order of Supervision, (Ex. 2 to First Am. Pet., ECF No. 13-3). Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** that the parties must file a **JOINT** Status Report by **October 30, 2026,** to certify compliance with the Court's order, including the date and time of Petitioner's release.

**IT IS FURTHER ORDERED** that Respondents are prohibited from re-detaining Petitioner in the future absent proof of changed circumstances making his removal reasonably foreseeable.

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to a third country without providing Petitioner with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.

**IT IS FURTHER ORDERED** that Counsel for Respondents is directed to immediately provide notice of this Order to the parties they represent.

The Clerk of Court is kindly directed to enter judgment in favor of Petitioner.

**DATED** this 28 day of October, 2026.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT